**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>HEALTHCARE REAL ESTATE PARTNERS, LLC,<br><br>      Debtor. | Chapter 7<br><br>Case No. 15-11931 (CTG) |
| HEALTHCARE REAL ESTATE PARTNERS, LLC,<br><br>      Plaintiff,<br><br>v.<br><br>SUMMIT HEALTHCARE REIT, INC., *et al.*,<br><br>      Defendants. | Adv. Pro. No. 16-50981 (CTG)<br><br>**Related Docket Nos. 58 & 77** |

## <u>MEMORANDUM OPINION</u>

The dispute before the Court arises in an exceptionally unusual procedural posture. A group of petitioning creditors filed an involuntary case against the debtor. When the debtor failed to respond to the petition the Court entered an order for relief. The debtor then appeared and moved to vacate that order for relief. After the Court said it would vacate the order, thus affording the debtor the opportunity to contest the involuntary petition, the petitioning creditors then sought and obtained an order dismissing the case. After the case was dismissed, the debtor, in addition to seeking damages against the petitioning creditors under section 303(i) for allegedly filing the case in bad faith, also asserted a claim for violation of the automatic stay. The

petitioning creditors asserted various counterclaims (to the automatic stay claim) against the debtor.

The petitioning creditors seek judgment on the pleadings on the debtor's claim for violation of the automatic stay. That motion raises a question – whether a corporate entity can qualify as an "individual" under section 362(k) – on which the Third Circuit decision that is controlling on this Court breaks with a consensus view that has developed in the other federal courts of appeals. It may well turn out, however, that the same damages sought for the alleged violations of the automatic stay can also be recovered by the debtor on account of the alleged bad-faith filing. Or it may also turn out that the debtor is not entitled to damages under either theory. Because the claims involve the same evidence, under the circumstances the Court believes that prudence counsels in favor of addressing this issue if and only if it turns out that it will make a difference to the parties. The Court will accordingly defer resolution of those matters until after it considers the evidence at trial.

The debtor moves to dismiss the petitioning creditors counterclaims. Those claims fall into two categories. *First*, two of the counterclaims seek what are essentially declaratory judgments that are tantamount to ruling in favor of the petitioning creditors on the debtor's automatic stay claim. While courts may dismiss such claims on the ground that they are redundant, such dismissal is only appropriate where it is perfectly clear that they add nothing to a substantive ruling on the plaintiff's claim. While it is not presently clear to the Court what these claims might

add to the case, the Court will deny the motion to dismiss and will consider the issue after it has had the opportunity to review the evidence at trial.

*Second*, three of the counterclaims assert state-law claims (breach of contract, breach of implied covenant of good faith and fair dealing, and alter ego) against the debtor. Because these are not compulsory counterclaims, they require their own basis for subject-matter jurisdiction. But what is highly unusual about the circumstances of this case is that these claims were filed after the bankruptcy was dismissed, such that there was no longer a bankruptcy estate. As a result, these claims (which certainly do not arise under the Bankruptcy Code or arise in a bankruptcy case, as those terms are used in the jurisdictional statute) are outside the "related-to" jurisdiction of 28 U.S.C. § 1334(b), which requires a "conceivable effect" on a bankruptcy estate. In the absence of a bankruptcy estate, there can be no such effect.

The parties dispute whether the claims are within the diversity jurisdiction (28 U.S.C. § 1332) or the supplemental jurisdiction (28 U.S.C. § 1367). This Court is satisfied (for the reasons Judge Shannon set forth in *In re Semcrude*[1]) that it may not exercise supplemental jurisdiction. Beyond that, the issues presented in the motion to dismiss these counterclaims are not questions for this Court to resolve. The only jurisdiction that has been referred to this Court is the district court's bankruptcy jurisdiction provided in 28 U.S.C. § 1334(b). These counterclaims fall outside that referral. This Court thus has no authority to adjudicate those counterclaims. In the Court's view, the most appropriate way to address these counterclaims – under the

---

[1] 2010 WL 5140487, at *18 (Bankr. D. Del. Dec. 13, 2010).

highly unusual circumstances presented by this case – would be to sever these claims under Rule 21, thus permitting the Petitioning Creditors to proceed on these counterclaims in the district court in whatever manner the district court determines to proceed.

Because this case was recently re-assigned to the undersigned judge with the motion for judgment on the pleadings and motion to dismiss fully briefed, the Court held a status conference on January 31, 2022 to discuss with the parties how it intended to resolve the pending motions, and offer them the opportunity to correct anything the Court may have misunderstood about a dispute in which the parties had been involved for many years.  To that end, counsel for the Petitioning Creditors explained that they intended to assert the counterclaims only as a "defensive mechanism" to reduce the damages they may owe to Healthcare Real Estate.[2]  And the Petitioning Creditors are correct that, outside of bankruptcy, a defendant may assert what would otherwise be a permissive counterclaim as an affirmative defense to reduce its potential exposure without an independent basis for jurisdiction over those claims.  The case law and treatises make clear, however, that the statutory basis for this rule is the supplemental jurisdiction under section 1367, which authority (as *Semcrude* explained) cannot be exercised in bankruptcy.  The Court will accordingly sever the state-law counterclaims.

---

[2] Jan. 31, 2022 Hearing Tr. at 26.

## Factual and Procedural Background

The factual background of the disputes between the parties is set forth in previous opinions of the District Court and the Court of Appeals.[3] That background is complex, and while the factual details will be important to the Court's ultimate resolution of the plaintiff's pending motion for damages under 11 U.S.C. § 303(i) and (perhaps) its claim for violation of the automatic stay, 11 U.S.C. § 362(a), they are not critical to understanding the issues presented in the motions now before the Court.

For this purpose, it is sufficient to know that the plaintiff was put into an involuntary bankruptcy by the defendants.[4] When Healthcare Real Estate did not respond to the involuntary petition the Court entered an order for relief.[5] But Healthcare Real Estate, arguing that it did not receive notice of the involuntary petition in time to retain counsel and contest it, moved to vacate the order for relief.[6]

---

[3] *See Healthcare Real Estate Partners, LLC v. Summit Healthcare REIT, Inc.*, 2018 WL 4500880 (D. Del. Sept. 19, 2018); *In re Healthcare Real Estate Partners, LLC*, 941 F.3d 64 (3d Cir. 2019).

[4] *In re Healthcare Real Estate Partners, LLC,* No. 15-11931 (CTG) (Bankr. D. Del. Sept. 16, 2015), D.I. 1. The plaintiff in this adversary is Healthcare Real Estate Partners, LLC, which, as will be further explained below, was (but is no longer) a debtor in bankruptcy. It will be referred to as "Healthcare Real Estate." The defendants were the creditors that filed the involuntary bankruptcy petition, along with Summit Healthcare REIT, Inc., whom the plaintiff describes as the "de facto petitioning creditor." D.I. 1 ¶ 7. Simply as a matter of convenience, they will be referred to as the "Petitioning Creditors."

[5] *In re Healthcare Real Estate Partners, LLC,* No. 15-11931 (CTG) (Bankr. D. Del. Oct. 9, 2015), D.I. 7.

[6] *In re Healthcare Real Estate Partners, LLC,* No. 15-11931 (CTG) (Bankr. D. Del. Oct. 23, 2015), D.I. 10.

After an evidentiary hearing, this Court stated on the record that it would grant that motion and directed the parties to submit a proposed order so providing.[7] But in the period after the order for relief was entered, however, it is alleged the Petitioning Creditors were able (on account of the bankruptcy) to replace Healthcare Real Estate as the manager of certain funds in which the Petitioning Creditors were investors.[8]

Rather than submitting an order vacating the order for relief and setting a trial date on the involuntary petition, the Petitioning Creditors instead moved to dismiss the bankruptcy case on the ground that the debtor had no assets or business operations.[9] Healthcare Real Estate objected to the dismissal, but solely to preserve its right to seek damages under Section 303(i) of the Bankruptcy Code.[10] This Court granted the motion to dismiss while reserving jurisdiction for the purpose of considering a motion under Section 303(i).[11]

---

[7] *In re Healthcare Real Estate Partners, LLC,* No. 15-11931 (CTG) (Bankr. D. Del. Jan. 8, 2016), D.I. 37 at 154-156.  The Court further directed that the proposed order also set out a proposed schedule and a trial date on whether an order for relief should be entered on the involuntary petition.

[8] D.I. 1 ¶ 30.

[9] *In re Healthcare Real Estate Partners, LLC,* No. 15-11931 (CTG) (Bankr. D. Del. Mar. 4, 2016), D.I. 39.

[10] *In re Healthcare Real Estate Partners, LLC,* No. 15-11931 (CTG) (Bankr. D. Del. Mar. 25, 2016), D.I. 43.

[11] *In re Healthcare Real Estate Partners, LLC,* No. 15-11931 (CTG) (Bankr. D. Del. Apr. 18, 2016), D.I. 53.

Healthcare Real Estate (now no longer a debtor in bankruptcy) filed such a motion under Section 303(i)[12] but *also* brought this adversary proceeding seeking sanctions for violation of the automatic stay, contending that the actions taken by the Petitioning Creditors after the filing of the petition (such as removing Healthcare Real Estate as the manager of the investment funds) violated 11 U.S.C. § 362(a)(3).[13] Defendants moved to dismiss the adversary on the ground that the Court had limited its retention of jurisdiction to the motion for damages under section 303(i).[14]  This Court granted that motion and thus dismissed the claim for violation of the automatic stay.[15]

The District Court affirmed that decision,[16] but the Third Circuit reversed, explaining that the claim for violation of the automatic stay was a statutory cause of action created by the Bankruptcy Code, and that jurisdiction over that cause of action did not depend on a relationship to the main bankruptcy case.[17]  Rather, relying on a Tenth Circuit decision, the Third Circuit concluded that bankruptcy courts "maintain jurisdiction of § 362(k)(1) proceedings" seeking damages for violation of the automatic stay despite the dismissal of the underlying main bankruptcy case.[18]  In the absence

---

[12] *In re Healthcare Real Estate Partners, LLC,* No. 15-11931 (CTG) (Bankr. D. Del. May 18, 2016), D.I. 55.

[13] D.I. 1.

[14] D.I. 21.

[15] D.I. 30.

[16] 2018 WL 4500880.

[17] 941 F.3d at 69.

[18] *Id.* (quoting *In re Johnson*, 575 F.3d 1079, 1084 (10th Cir. 2009)).

of a valid basis to abstain from hearing a case (either statutory or under a recognized judicial abstention doctrine) "federal courts must hear matters within their jurisdiction."[19]  The Third Circuit accordingly remanded the case back to this Court to decide the plaintiff's claim for violation of the automatic stay along with the plaintiff's claim for damages under section 303(i).

On remand, the defendants answered the complaint and also asserted a series of counterclaims against the plaintiff.[20]  Defendants have moved for judgment on the pleadings on the claim for violation of the automatic stay.[21]  And the plaintiff has likewise moved to dismiss various counterclaims that the defendants have asserted.[22] The operative scheduling order in this case consolidates the 303(i) claim with the adversary proceeding for automatic stay damages and provides that the case will be prepared for trial following the disposition of those pending motions.[23]  By order dated January 14, 2022, the case was reassigned to the undersigned judge.[24]  After setting forth preliminary reactions to the issues presented in the pending motions,[25] the Court held a status conference on January 31, 2022.

---

[19] *Id.* at 71 (citing *Sprint Commc'ns v. Jacobs*, 571 U.S. 69, 77 (2013)).

[20] D.I. 54.

[21] D.I. 77.

[22] D.I. 58.

[23] D.I. 133.

[24] D.I. 135.

[25] D.I. 136.

## Analysis

**I.    The Court will defer consideration of the defendants' motion for judgment on the pleadings on the claim for violation of the automatic stay pending resolution of the motion for damages under section 303(i).**

The Petitioning Creditors' motion for judgment on the pleadings on the plaintiff's automatic stay claim raises legal issues on which there is fair room for disagreement.  Among other issues, there is a dispute about whether the interests with which the Petitioning Creditors interfered amounted to the exercise of control over "property of the estate" within the meaning of 11 U.S.C. § 362(a)(6).[26]   In addition, 11 U.S.C. § 362(k), the statutory provision that creates a damages cause of action for willful violation of the automatic stay, applies by its claims by "an individual."  While the Third Circuit held in 1990 that this provision is "applicable to a corporate debtor,"[27] other courts of appeals have since that time lined up uniformly on the other side of the question.[28]   While *Atlantic Business* remains binding and controlling authority in this Court, if this Court were ultimately to enter an award in favor Healthcare Real Estate on that basis, such a ruling would likely delay the final resolution of these disputes, since the continuing vitality of the *Atlantic Business*

---

[26] The Petitioning Creditors argue that under Delaware Law Healthcare Real Estate's managerial role in the investment funds, without an ownership interest, is not a "property right."  Healthcare Real Estate responds that the contract itself is a property right within the meaning of Section 362(a)(3).

[27] *In re Atlantic Bus. & Cmty. Corp.*, 901 F.2d 325, 328-329 (3d. Cir. 1990).

[28] *See In re Chateaugay Corp.,* 920 F.3d 183, 185-186 (2d Cir. 1990); *In re Spookyworld Inc.,* 346 F.3d 1, 8 (1st Cir. 2003); *In re Just Brakes Corp. Sys.*, 108 F.3d 881, 884-85 (8th Cir. 1997); *In re Jove Eng'g Inc.*, 92 F.3d 1539, 1549-1553 (11th Cir. 1996)*; In re Goodman,* 991 F.2d 613, 619 (9th Cir. 1993).

decision may well warrant the attention of *en banc* Third Circuit or the Supreme Court.

This Court will of course follow wherever the law and facts direct. But as the District Court and the Third Circuit both observed, the damages that Healthcare Real Estate is seeking for violation of the automatic stay overlaps, perhaps entirely, with the damages it is seeking under section 303(i).[29] Because the standard for obtaining relief under those two statutory provisions may differ, it is of course possible that the evidence will ultimately suggest that some of the relief that Healthcare Real Estate seeks under *both* section 303(i) and 362(k) is *not* available under section 303(i) but may be available under section 362(k). In that event, the Court will be required to address the issues posed by the claim for violation of the automatic stay. It is also possible, however, that in light of the evidence that comes in, the availability (or not) of a claim for violation of the automatic stay will make no difference to Healthcare Real Estate's ability to recover against the Petitioning Creditors.

Trial courts enjoy substantial discretion to manage their dockets, including structuring the order in which they decide the issues presented, in the manner that will best advance the interests of justice.[30] Those interests include both the prompt resolution of disputes and the avoidance of difficult questions whose resolution is not

---

[29] 2018 WL 4500880, at *4; 941 F.3d at 72.

[30] *See generally*, *Landis v. N. Am. Co.*, 299 U.S. 248, 254–255 (1936); *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) ("This Court has also held that district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases."); *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817 (3d Cir. 1982) (explaining that "[m]atters of docket control . . . are committed to the sound discretion of the district court.")

necessary to the disposition of the case.[31]  The Court will accordingly defer resolution of the motion for judgment of the pleadings until such time as it has heard the evidence on the motion under section 303(i) and is in a position to determine whether the availability (or not) of a claim for violation of the automatic stay might affect the relief (if any) to which Healthcare Real Estate is entitled.

## II.    The Court will deny the motion to dismiss the counterclaims for declaratory judgment and will sever the claims that are outside the scope of section 1334(b)'s bankruptcy jurisdiction.

The Petitioning Creditors assert five counterclaims: (i) breach of contract; (ii) breach of implied covenant of good faith and fair dealing; (iii) a declaratory judgment that Healthcare Real Estate did not have a property interest in the investment funds; (iv) declaratory judgment that Healthcare Real Estate lacks standing to assert claims under either section 303(i) or the automatic stay; and (v) a claim that Healthcare Real Estate is liable as the alter ego of certain of its affiliates (against whom certain of the Petitioning Creditors hold claims).  The declaratory judgment counts (counts (iii) and (iv)) essentially seek declarations that the plaintiff cannot recover against the defendant and appear, in substance, to be no different than defenses to the plaintiff's

---

[31] *See, e.g., Turner v. Harrah's New Orleans Hotel & Casino*, 2011 WL 1666925, at *5 (C.D. Calif. Apr. 21, 2011) (court exercised its discretion to address venue first because doing so permitted to avoid a "substantial dispute" over personal jurisdiction.  While the Supreme Court has condemned the practice of assuming "hypothetical jurisdiction" to resolve a case on the merits on a non-controversial basis to avoid addressing a more difficult question of subject-matter jurisdiction, *see Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998), that is only because of the special status of subject-matter jurisdiction.  "The requirement that jurisdiction be established as a threshold matter spring[s] from the nature and limits of the judicial power of the United States and is inflexible and without exception." *Id.* at 94-95 (internal quotation omitted).

claims.  The remaining counts (counts (i), (ii), and (v)) seek affirmative recovery on what are state-law causes of action.

### A.    The motion to dismiss the declaratory judgment counts will be denied.

Count (iii) seeks a declaration that the Petitioning Creditors did not violate the automatic stay.  Count (iv) seeks a declaration that Healthcare Real Estate lacks standing to assert its claim against Petitioning Creditors.  Both of these counts appear to be, at bottom, defenses to the claims asserted by Healthcare Real Estate. It is therefore by no means obvious that the entry of a declaratory judgment would grant the Petitioning Creditors any substantive relief beyond what they would receive if they were to prevail on the merits of the debtor's automatic stay claim.

It is well established that a court has the discretion to dismiss a claim for declaratory judgment that is essentially redundant in light of the court's disposition of other counts in a complaint.[32]  While that may well be true here (indeed, it appears to be), courts have also explained that such claims should be dismissed before trial "only when there is no doubt that they will be rendered moot by adjudication of the main action."[33]  Because there seems to be little consequence to allowing the claims to remain in the case until it becomes clear whether they are wholly redundant, the Court will deny the motion to dismiss counts (iii) and (iv).

---

[32] 3 MOORE'S FEDERAL PRACTICE – CIVIL § 13.41 ("if a declaratory counterclaim is entirely redundant of the opposing party's claim, it is repetitious and unnecessary and may be struck or dismissed by the court").

[33] *In re PHL Variable Ins. Co. v. Helene Small Ins. Tr.*, 2012 WL 5382905, at *1 (D. Del. Nov. 1, 2012).

### B.    The Court will sever the state-law claims under Rule 21.

Counts (i), (ii), and (v) are essentially state-law claims seeking recovery against Healthcare Real Estate for breach of contract, breach of the implied covenant of good faith and fair dealing, and on the theory that Healthcare Real Estate is the alter ego of certain of its affiliates that owe outstanding amounts to the Petitioning Creditors. Healthcare Real Estate has moved to dismiss those counts for lack of subject-matter jurisdiction and for failure to state a claim.  This Court is persuaded that these claims fall outside the bankruptcy jurisdiction set out in 28 U.S.C. § 1334(b).

The parties argue over whether the claims might fit within some other basis of jurisdiction, such as the supplemental jurisdiction set forth in 28 U.S.C. § 1367 or the diversity jurisdiction set out in 28 U.S.C. § 1332.  This Court does not believe, however, that it has the authority to resolve those questions.  Bankruptcy courts do not have their own subject-matter jurisdiction.  The jurisdiction set out in section 1334(b) is granted to the district court.  That jurisdiction may be (and has been) referred to this Court under 28 U.S.C. § 157(b).[34]  But that is the only jurisdiction that, as a statutory matter, may be referred to this Court.  And the district court's standing order of reference is exactly coextensive with the grant of statutory authority.  Accordingly, to the extent there is a dispute about whether these counterclaims are within the supplemental or diversity jurisdiction (and whether they state a claim on which relief may be granted), those are questions that the

---

[34] See also the Standing Order of the U.S. District Court for the District of Delaware, dated February 29, 2012.

district court has not referred and cannot refer to this Court.  But that does not mean that the claims should be dismissed.  Rather, it means that, as a technical matter, these claims are now pending in the district court rather than this Court.  This Court will accordingly sever those claims under the authority set out in Federal Rule of Civil Procedure 21.  The Petitioning Creditors are free to proceed on those claims before the district court as they (and, of course, the district court) deem appropriate.  But in view of this Court's intention to proceed promptly on the remaining claims, it may be appropriate to raise these claims with the district court whenever the balance of this case returns to the district court – presumably on appeal from this Court's resolution of the remaining claims.

### 1.    The state-law claims are not compulsory counterclaims.

The Petitioning Creditors argue that the state-law claims they wish to assert against the debtor are compulsory counterclaims to the debtor's claim for alleged violation of the automatic stay.[35]  If they were, no independent basis for jurisdiction would be required.  Rather, a compulsory counterclaim is viewed as part of the same jurisdictional unit as the principal claim.[36]  A counterclaim is compulsory, however, only if it arises out of the same "transaction or occurrence" as the principal claim.[37]  At bottom, the question is whether the claim and the counterclaim arise out of the same basic facts, such that trying the claim and counterclaim will involve hearing the

---

[35] D.I. 78 at 24-26.

[36] *See generally United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966); *Ambromovage v. United Mine Workers of America*, 726 F.2d 972, 991 (3d Cir. 1984).

[37] *See* Fed. R. Civ. P. 13(a)(1)(A).

same testimony and reviewing the same exhibits.  In that event, the defendant ought to be required to raise the counterclaim as the same time as the principal claim, or else lose the right to assert it later.[38]

The state-law claims here do not meet that standard.  The Petitioning Creditors' claims for breach of contract and the implied covenant of fair dealing all involve prepetition dealings between the parties, whereas Healthcare Real Estate's claim for violation of the automatic stay arises (necessarily) out of the Petitioning Creditors' post-petition conduct.  And the alter ego claim turns on the dealings between Healthcare Real Estate and various of its affiliates, which involve a set of facts that are quite distinct from the claim for violation of the automatic stay.  Thus, because the state-law claims are not compulsory counterclaims, they require a separate basis for subject-matter jurisdiction.

### 2.    The state-law claims are not otherwise within the bankruptcy jurisdiction.

Petitioning Creditors also argue, pointing to the Third Circuit's decision reversing the dismissal of the automatic stay claims, that bankruptcy jurisdiction "does not require a bankruptcy estate."[39]  That statement is true as far as it goes. Section 1334(a) creates exclusive jurisdiction in the district court over "all cases under title 11."[40]  And section 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising

---

[38] *Transamerica Occidental Life Ins. Co. v. Aviation Office of America*, 292 F.3d 384, 388-389 (3d Cir. 2002).

[39] DI. 78 at 23-24.

[40] 28 U.S.C. § 1334(a).

in or related to cases under title 11."[41]  The "related-to" jurisdiction is limited to disputes that may have a conceivable effect on the bankruptcy estate.[42]  A bankruptcy estate is thus a necessary antecedent to the exercise of the "related-to" jurisdiction. But no bankruptcy estate is necessary to any of the other heads of jurisdiction provided in section 1334.

The difficulty this poses for the Petitioning Creditors, however, is that while their counterclaims would have had an effect on the bankruptcy estate had the estate existed at the time their claims were filed – indeed, they would have been prepetition claims that could have only been asserted in bankruptcy – that is the only basis on which they would fit within section 1334's bankruptcy jurisdiction.  There can be no suggestion that the state-law counterclaims might fit within section 1334(b)'s "arising in" or "arising under" bases for jurisdiction.[43]  And section 1334(a)'s jurisdiction over "cases under title 11" refers to the bankruptcy petition itself.[44]

The only argument that the Petitioning Creditors make is that their counterclaims fall within the "related to" jurisdiction because they "relate to [the automatic stay claim] which itself constitutes a 'case' under title 11."[45]  This argument, however, fails for two reasons.  *First*, the automatic stay claim "arises

---

[41] *Id.* § 1334(b).

[42] *See In re Pacor*, 743 F.2d 984, 994 (3d Cir. 1984); *In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 378-384 (3d Cir. 2002).

[43] *See Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006) (describing the contours of each of the four bases of bankruptcy jurisdiction).

[44] *In re Combustion Eng'g*, 391 F.3d 190, 225 n.38 (3d Cir. 2004).

[45] D.I. 78 at 24.

under" the Bankruptcy Code within the meaning of section 1334(b) but is not a "case under" the Bankruptcy Code.  As noted above, the "category of cases 'under' title 11 'refers merely to the bankruptcy petition itself.'"[46]  *Second*, as also described above, the "related-to" jurisdiction has a well-established meaning – it requires a conceivable effect on the bankruptcy estate, which is absent here.  Accordingly, the Petitioning Creditors' counterclaims do not fall within section 1334's bankruptcy jurisdiction.

### 3. The state-law claims accordingly have not been, and cannot have been, referred to this Court.

Petitioning Creditors argue that even if their claims fall outside the bankruptcy jurisdiction, there is still subject-matter jurisdiction over their claims under the supplemental jurisdiction provided in 28 U.S.C. § 1367 or the diversity jurisdiction provided in 28 U.S.C. § 1332.[47]

*Supplemental jurisdiction.*  As Judge Shannon explained in *In re Semcrude*, the majority view (which he adopted) is that there is no jurisdiction that is "supplemental" to the bankruptcy jurisdiction.[48]  The rationale is that section 1334(b) contains an express grant of "related to" jurisdiction, whose limits would be undermined if a case could be heard on the ground that it was "supplemental" to the bankruptcy jurisdiction.[49]  Moreover, if Congress intended to permit district courts to hear a case because it was "supplemental" to a case within the court's bankruptcy

---

[46] *Stoe*, 436 F.3d at 216.

[47] D.I. 78 at 26-28.

[48] 2010 WL 5140487, at *18 (Bankr. D. Del. Dec. 13, 2010).

[49] *Id.* (quoting *In re Enron Corp.*, 353 B.R. 51, 61 (Bankr. S.D.N.Y. 2006)).

jurisdiction under section 1334, one would have expected Congress to have permitted the district court to refer such cases to the bankruptcy judges in that district. The fact that section 157(a), however, permits the district court to refer to the bankruptcy judges for the district only "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11" – language that is exactly coextensive with the grant of the subject-matter jurisdiction under section 1334 and does not mention any supplemental jurisdiction – strongly suggests that section 1367's supplemental jurisdiction does not apply to section 1334's bankruptcy jurisdiction.

*Diversity jurisdiction.* The Petitioning Creditors also contend that there is diversity jurisdiction over their state-law counterclaims.[50] But the fact that the referral from the district court to bankruptcy judges is limited by statute to cases within section 1334's bankruptcy jurisdiction means that this Court has no authority to address the question whether those counterclaims are or are not within the district court's diversity jurisdiction. Nothing in section 157 would authorize the district court to refer such matters to this Court. And the district court's February 29, 2012 standing order certainly does not purport to refer to this Court anything more than section 157 authorized.

The allocation of authority between the district court and the bankruptcy court, enacted in 1984 in response to the Supreme Court's decision in *Northern*

---

[50] D.I. 78 at 27.

*Pipeline v. Marathon Pipe Line*,[51] is well described in a series of cases that includes

the Third Circuit's decisions in *In re Marcus Hook Development Park, Inc.*,[52] *In re*

*Resorts International*,[53] and *Stoe v. Flaherty*,[54] as well as the Supreme Court's

decisions in *Stern v. Marshall*,[55] *Executive Benefits Ins. Agency v. Arkison*,[56] and

*Wellness Intern. Network, Ltd. v. Sharif*.[57]

This Court will not repeat that analysis, but at a high level, *Marathon* held

that the 1978 statutory scheme, that allowed bankruptcy courts to adjudicate all

disputes within the bankruptcy jurisdiction, improperly delegated the "judicial power

of the United States" to bankruptcy judges who did not enjoy the protections required

by Article III of the Constitution.  The 1984 legislation that sought to solve that

problem relied on two separate constitutional doctrines, both discussed in *Marathon*.

*First*, while non-Article III courts may not finally adjudicate matters of

"private right" – an action that "from its nature, is the subject of a suit at the common

law, or in equity, or admiralty"[58] – a line of cases does permit the adjudication, outside

of Article III courts (such as by administrative agencies), of matters of "public right."

And the plurality opinion in *Marathon* recognized that "the restructuring of debtor-

---

[51] 458 U.S. 50 (1982).

[52] 943 F.2d 261 (3d Cir. 1991).

[53] 372 F.3d 154 (3d Cir. 2004).

[54] 436 F.3d 209.

[55] 564 U.S. 462 (2011).

[56] 573 U.S. 25 (2014).

[57] 575 U.S. 665 (2015).

[58] *Marathon*, 458 U.S. at 67 (quoting *Murray's Lessee v. Hopoken Land & Improvement Co.*, 59 U.S. 272 (1855)).

creditor relations, which is at the core of the federal bankruptcy power," may be viewed as a matter of public right similar to "such congressionally created benefits as radio station licenses, pilot licenses, or certificates for common carriers granted by administrative agencies."[59]   The adjudication of a state-law claim against a non-debtor, however, cannot fall within that "public rights" exception.

*Second*, even as to matters of private right, another line of cases "approved the use of administrative agencies and magistrates as adjuncts to Art. III courts."[60] Under that line of cases, however, the agency or magistrate must be "subject to sufficient control by an Art. III court" for it to truly be an adjunct.   That control includes having its factual findings subject to *de novo* review by the district court."[61]

The 1984 legislation seeks to establish an allocation of authority between the bankruptcy court and the district court that comports with these principles.   Section 157 provides a mechanism for the district court to "refer" matters that fall within its section 1334 subject-matter jurisdiction to the bankruptcy judges.   "Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."[62]   By standing order, the U.S. District Court for the District of Delaware has referred all such matters to this Court.   "Pursuant to 28 U.S.C. Section 157(a), any or all cases under Title 11 and any or all proceedings

---

[59] *Id.* at 71 (internal quotation omitted).

[60] *Id.* at 77 (citing *Crowell v. Benson*, 285 U.S. 22 (1932)).

[61] *Id.* at 79.

[62] 28 U.S.C. § 157(a).

arising under Title 11 or arising in or related to a case under Title 11 are referred to the bankruptcy judges for this district."[63]

The case law is clear, however, that section 157 has nothing to do with subject-matter jurisdiction, which is granted only to the district court. "Whether a particular proceeding is core represents a question wholly separate from that of subject-matter jurisdiction."[64]    Or as the Supreme Court explained, "Section 157 allocates the authority to enter final judgment between the bankruptcy court and the district court. That allocation does not implicate questions of subject matter jurisdiction."[65]

To solve the problem identified in *Marathon*, the mechanics of how matters that are within the district court's bankruptcy jurisdiction are referred to bankruptcy judges operates differently depending on the nature of the matter. Matters at the "core" of the "restructuring of debtor-creditor relationship," as the *Marathon* plurality described it – those that may fit within the "public rights" exception to Article III – may be "hear[d] and determine[d]" by the bankruptcy court.[66]    Those matters are

---

[63] U.S. District Court for D. Del., Feb. 29, 2012 Amended Standing Order of Reference.

[64] *Marcus Hook*, 943 F.2d at 266.

[65] *Stern*, 564 U.S. at 480.  Because the Supreme Court has cautioned against the use of jurisdictional language when referring to matters that are not jurisdictional in nature, *see Kontrick v. Ryan*, 540 U.S. 443, 454-455 (2004) (faulting courts for being "less than meticulous in this regard"), this Court believes the better practice is to avoid statements, common in bankruptcy parlance, such as "this Court has jurisdiction under 28 U.S.C. §§ 157 and 1334."  A more technically accurate, albeit wordier, formulation would be that "the district court has jurisdiction under 28 U.S.C. § 1334, which was referred to this Court under 28 U.S.C. § 157."  The undersigned judge acknowledges, however, that he often enters agreed orders using the less precise formulation.

[66] 28 U.S.C. § 157(b)(1).  As *Stern* held, the enumeration of "core" matters in section 157(b)(2) is in at least some respects broader than the Constitution permits.  564 U.S. 462.  That cluster of issues, however, is immaterial to the matter now before this Court.

supervised by the district court by ordinary appellate processes.[67]  Alternatively, the district court always retains the authority, at any time, on its own motion or on that of a party, to withdraw the reference over some or all of any case or proceeding that was referred to the bankruptcy court.[68]  On the other hand, matters that will not fit within the "public right" exception but are still "related to" the bankruptcy may still be heard by the bankruptcy court, but in those cases the bankruptcy court plays a role analogous to that played by magistrate judges to whom matters are referred under 28 U.S.C. § 636(b)(1)(B).  The bankruptcy judge may hear the dispute and make proposed findings and conclusions, which are subject to the district court's de novo review.[69]

For current purposes, however, the central point of this discussion is that this rather elaborate statutory scheme operates to allocate responsibility between the district court and the bankruptcy court of matters that fall within one of the four categories of the district court's bankruptcy jurisdiction provided in section 1334 – (i) cases under title 11, (ii) civil proceedings arising under title 11, (iii) disputes arising in cases under title 11, and (iv) disputes related to cases under title 11.  There is no

---

[67] 28 U.S.C. § 158.

[68] *Id*. § 157(d).

[69] *Id*. § 157(c)(1).

statutory mechanism in section 157 for referring any other matter to the bankruptcy court.

For this reason, this Court does not believe it has any statutory authority to act on the contention that the Petitioning Creditors' state-law counterclaims are within the district court's diversity jurisdiction, or otherwise consider the motion to dismiss those claims. Such a claim is outside the scope of what the district court *may* refer to this Court under section 157(a) as well as being outside the scope of what the district court *did* assign to this Court in its standing order. On the other hand, the claims for damages under section 303(i) and for violation of the automatic stay under section 362 both "arise under" the Bankruptcy Code and are thus matters this court may "hear and determine" under section 157(b)(1). The remaining question, then, is how this Court may proceed promptly to resolve those matters that have been referred to it under section 157 while respecting the proper limits of its authority provided by statute.

### 4.    The state-law counterclaims will be severed under Rule 21.

In the Court's view, the best mechanism for addressing the problem presented by the unusual circumstances of this case is to sever the Petitioning Creditors' counterclaims under Federal Rule of Civil Procedure 21 (which is made applicable here under Federal Rule of Bankruptcy Procedure 7021).

Rule 21 provides that "[m]isjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop

a party.  The court may also sever any claim against a party."[70]  The last sentence of the rule is the one applicable here.

Wright and Miller explain that "questions of severance are addressed to the broad discretion" of the trial court.[71]  One of the paradigmatic uses of the authority to sever involves a circumstance in which venue is appropriate as to certain claims or parties but not others.  In that case, the Court may sever and transfer the claims or parties that may not proceed before it, and then proceed to adjudicate the rest of the dispute.[72]

That mechanism seems best tailored to the situation before this Court, in which Healthcare Real Estate has asserted claims against the Petitioning Creditors that are within the district court's jurisdiction and have been referred to this Court, but to which the Petitioning Creditors have asserted counterclaims that are outside the scope of what can be, or was, referred to this Court.

Severing the counterclaims would result in those counterclaims becoming their own "discrete unit with its own final judgment, from which an appeal may be taken."[73]  In this Court's view, the consequence of the counterclaims not being subject to the reference provided in section 157 is that they would technically remain pending in

---

[70] Fed. R. Civ. P. 21.

[71] Charles Alan Wright, *et al.*, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1689 (3d ed. 2021).

[72] *Id.  See, e.g., Goldberg v. Wharf Constructers*, 209 F. Supp. 499 (N.D. Ala. 1962) (severing claim over defendants over whom venue was improper).

[73] WRIGHT AND MILLER § 1689.

the district court. And the manner in which the district court would elect to proceed on such claims would then be a matter within that court's discretion.

### C. Casting the state-law counterclaims as affirmative defenses would not alter the analysis.

At the January 31, 2022 status conference, the Court explained to the parties its concern that it could not act on the counterclaims, to the extent that they were founded on the diversity jurisdiction, because such matters are outside the scope of the reference to this Court.[74] In response to these points, counsel for the Petitioning Creditors pointed out that the state-law counterclaims were intended to be asserted "as a defensive mechanism so that if in the event there are damages[,] those damages would be reduced by that counterclaim."[75]

In substance, the Court understands these comments to suggest that what the Petitioning Creditors actually seek to do is to assert an affirmative defense of setoff to Healthcare Real Estate's claims under section 303(i) and for violation of the automatic stay. And while the Petitioning Creditors' Answer, Defenses and Counterclaims[76] asserts the state-law claims as affirmative claims rather than affirmative defenses, if granting leave to amend the answer would have permitted all of the claims to be tried together rather than requiring severance of the state-law counterclaims, the Court would certainly have entertained granting such leave.

---

[74] Jan. 31, 2022 Hearing Tr. at 19-23.

[75] *Id.* at 26.

[76] D.I. 54.

In addition, the Petitioning Creditors are correct there is a recognized doctrine under which a permissive counterclaim may be asserted as an affirmative defense, merely to reduce the plaintiff's recovery on its claim, without an independent basis for jurisdiction. "Assertion of a defensive set-off is the one generally recognized exception to the rule that a permissive counterclaim requires an independent basis for jurisdiction."[77]

Upon closer analysis, however, that doctrine does not appear to have any application to the present circumstances. *First*, it is true that the Third Circuit suggested that there may be an exception (albeit one that it says was "apparently invented by Professor Moore"[78]), applicable to the assertion of setoff as a defense, to the principle that a permissive counterclaim must have a separate jurisdictional basis. The court, however, says that this exception applies only when the claim is "for a liquidated or otherwise ascertained amount,"[79] neither of which is the case here. *Second*, the most recent edition of Moore's treatise explains that the rule "is now [since 1990] controlled by the supplemental jurisdiction statute."[80] And for the reasons described above (and by the *Semcrude* court), this Court cannot exercise any of the jurisdiction granted to the district court under section 1367 (because it is outside the scope of the referral to the bankruptcy court authorized by section 157(a)

---

[77] *Curtis v. J.E. Caldwell & Co.*, 86 F.R.D. 454, 457 (E.D. Pa. 1980). *See also Lefkowitz v. Wagner*, 395 F.3d 773, 781 (7th Cir. 2005); William A. Fletcher, *"Common Nucleus of Operative Fact" and Defensive Set-Off: Beyond the Gibbs Test*, 74 Ind. L.J. 171, 172-78 (1998).

[78] *Ambromovage*, 726 F.2d at 988.

[79] *Id.*

[80] 3 MOORE'S FEDERAL PRACTICE – CIVIL § 13.31.

and set forth in the district court's standing order).   Accordingly, the Petitioning Creditors' suggestion that they be permitted to assert the state-law counterclaims merely for "defensive purposes" does not alter the analysis requiring that those claims be severed.

* * *

This Court will enter a separate order severing the Petitioning Creditors' state-law counterclaims under Rule 21 and providing that the remaining issues presented in the motions will be addressed by the Court on a post-trial basis.   As discussed at the January 31, 2021 hearing, the parties should seek to settle a further amended scheduling order providing an evidentiary hearing on the claims under section 303(i) and section 362(k).   The certification of counsel should indicate the date by which counsel expect to be ready to have the hearing begin and the number of days they anticipate for the evidentiary hearing.   The Court will then enter an appropriate scheduling order.

Dated: February 4, 2022

_____
CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE