## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| HEALTHCARE REAL ESTATE PARTNERS, LLC, | Case No. 15-11931 (CTG) |
| Debtor. | |
| HEALTHCARE REAL ESTATE PARTNERS, LLC, | Adv. Proc. No. 16-50981 (CTG) |
| Plaintiff, | **Related Docket Nos. 223 & 224** |
| v. | |
| SUMMIT HEALTHCARE REIT, INC., *et al.*, | |
| Defendants. | |

## <u>MEMORANDUM OPINION</u>

This case involves an involuntary bankruptcy petition that the Court concluded was filed in bad faith, but where the debtor's business had effectively collapsed before the filing. As a result, the debtor's only damages were the fees it incurred in connection with the filing. Following a trial in January 2023, this Court issued a <u>May 2023 Memorandum Opinion</u> concluding that the debtor was entitled to an award of attorneys' fees and costs on its motion under § 303(i) on account of the improper filing and additional fees on its complaint brought under § 362(k) for violations of the automatic stay.[1]

---

[1] The May 2023 Memorandum Opinion is docketed at D.I. 256 in the main case and D.I. 209 in the adversary proceeding. This Memorandum Opinion supplements and amends the findings of fact and conclusions of law set out in the May 2023 Memorandum Opinion

Because the Court concluded that the fees attributable to the § 303(i) motion were subject to a cap of $75,000 ($50,000 for what it would have reasonably cost to oppose the involuntary filing and $25,000 for the reasonable cost of filing a motion to recover the $50,000 in fees), it was required to allocate the total fees between the two counts – a task the Court undertook without the benefit of briefing or argument by the parties (since the debtor took the view that it was entitled to all of its fees without cap and the petitioning creditors argued that it was entitled to none).

The Court allocated fees among three different categories: (1) fees for work related to the §303(i) motion, (2) fees for work related to the § 362(k) complaint, and (3) fees that related to both theories. For the fees that fell under the third category, the Court divided the fees in half, allocating 50% to the § 303(i) motion and 50% to the § 362(k) complaint.

A chart that was attached as an appendix to the May 2023 Memorandum Opinion showed the math behind this calculation, explaining that the Court allocated $172,107.37 in fees to work related to the § 303(i) claim, but that award was capped, as set forth above, at $75,000. In addition, the Court would award $517,732.76 to the debtor on its claim for violation of the automatic stay under § 362(k).

The May 2023 Memorandum Opinion concluded by directing the parties to settle a form of order and/or judgment reflecting the Court's rulings. Before doing so, however, both parties pointed to alleged errors in the Court's analysis, primarily with

---

pursuant to Fed. R. Civ. P. 52, as made applicable to this contested matter under Fed. R. Bankr. P. 9014(c).

respect to aspects of the Court's ruling on which it lacked the benefit of briefing by the parties. Because no judgment had yet been entered, the Court's ruling was interlocutory and subject to reconsideration without being subject to the more demanding Rule 59(e) standard. Embracing Justice Frankfurter's observation that one should not reject wisdom "because it comes late," since it "too often never comes" at all, the Court encouraged the parties to file motions setting forth their views on the areas in which they believed the Court had gone astray.[2]

Both parties have done so. The debtor, Healthcare Real Estate Partners,[3] seeks reconsideration on four grounds:

- The Court erred in imposing the 50/50 split on fees that it found related to both motions. Fees that are attributable to both motions are ones that would have been incurred had the debtor brought *either* motion without also bringing the other. Dividing those fees in half operated, in effect, to "punish" the debtor for bringing the § 303(i) motion, since it would have incurred and recovered those fees in full had it only brought the § 362(k) complaint;

- Certain of the invoices were allocated to the wrong category;

- The imposition of the $25,000 cap on the cost associated with recovering fees was erroneous; and

---

[2] *Henslee v. Union Planters Nat'l Bank & Trust Co.*, 335 U.S. 595, 600 (1949) (Frankfurter, J., dissenting).

[3] Healthcare Real Estate Partners is referred to interchangeably as "HCRE" or the "debtor."

3

- The debtor is entitled to an award for the additional fees associated with the work during trial up until present, none of which was included in the original calculation of fees.

The defendants, Summit Healthcare REIT and the Petitioning Creditors,[4] seek reconsideration on three other grounds:

- The Court erred in awarding fees for the violation of the automatic stay, since the finding that the debtor suffered no injury precludes the debtor from being entitled to recover attorneys' fees;

- Even if attorneys' fees are permissible, the amount of fees awarded is unreasonable because the amount awarded is disproportionate to the harm suffered; and

- The Court should have capped the fees awarded under § 362(k) for the same reason it imposed a cap on the fees awarded under § 303(i).

The Court is persuaded by the logic of the debtor's position about the effect of the allocation of those fees attributable to both the motion and complaint, and will award the debtor all of those fees, as they indeed would have been incurred had the debtor only proceeded under § 362(k). The defendants do not take issue with the debtor's argument that certain of the invoices were improperly allocated between the two counts. The Court will therefore reallocate them. And the Court will award fees to the debtor for work performed during and after the trial, the invoices for which

---

[4] Summit Healthcare REIT, Inc. is referred to as "Summit Healthcare." Summit Healthcare and the individual petitioning creditors are the defendants in the adversary proceeding and are referred to, collectively, as the "defendants."

were not included with the evidence considered at trial. The Court rejects, however, the remaining arguments for reconsideration.

Each of the seven points addressed above is set forth in greater detail in the seven corresponding parts of this Memorandum Opinion. At bottom, the Court concludes that three of the arguments provide reasons for it to adjust the amount previously awarded. Those arguments are addressed in Parts I, II, and IV of this opinion. For simplicity, the following chart summarizes the revisions to the Court's award, based on the analysis set forth in each Part of this opinion.

| | 303(i) (before cap) | 303(i) (after cap) | 362(k) |
|---|---|---|---|
| Original award | $ 172,107.37 | $ 75,000.00 | $ 517,732.76 |
| Part I: removing 23 misallocated invoices | $ (62,313.52) | $ - | $ (62,313.53) |
| Part I: reallocating the 23 invoices | $ 18,072.00 | $ - | $ 106,555.05 |
| *Award after Part I* | *$ 127,865.85* | *$ 75,000.00* | *$ 561,974.28* |
| Part II: removing 6 misallocated invoices | $ (48,799.11) | $ - | |
| Part II: reallocating the 6 invoices | $ 24,752.11 | $ - | $ 24,047.00 |
| *Award after Part II* | *$ 103,818.85* | *$ 75,000.00* | *$ 586,021.28* |
| Part IV: Additional fees | $ - | $ - | $78,616.06 |
| *Award after Part IV (final)* | *$ 103,818.85* | *$ 75,000.00* | *$ 664,637.34* |

The net result of these changes is that while the amount that the Court would have awarded on the debtor's claim under § 303(i), but for the application of the cap, is reduced by nearly $70,000, that change has no effect on the actual award, since the $75,000 cap remains applicable in any event. The changes do, however, lead to an increase in the fees awarded under § 362(k) by almost $150,000, such that a judgment should be awarded in the adversary proceeding in the amount of $664,637.34.

## Factual and Procedural Background

The Court will spare the reader a full recitation of this case's complex factual and procedural history, which is set forth in greater detail in Memorandum Opinions issued in February 2022 [D.I. 141] and May 2023 [D.I. 209], familiarity with which is assumed.  This Memorandum Opinion addresses the arguments presented by the parties in their dueling motions for reconsideration of the rulings set forth in the May 2023 Memorandum Opinion.

## Analysis

Since this Court has neither entered an order on the § 303(i) motion nor a judgment on the § 362(k) complaint, the prior opinion is an interlocutory order.  As such, it may be reconsidered by the Court at any time before the entry of judgment.[5] Case law explains that, in light of the interest in obtaining finality, the law of the case doctrine generally counsels against reconsidering issues once they have been decided.[6]  These same cases, however, emphasize that the principle "does not restrict a court's power but rather governs its exercise of discretion."[7]  Here, the parties

---

[5] Fed. R. Civ. P. 54(b) ("any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"). The Federal Rules of Bankruptcy Procedure incorporate Rule 54 of the Federal Rules of Civil Procedure. *See* Fed. R. Bankr. P. 7054(a) (rendering Civil Rule applicable to adversary proceedings); Fed. R. Bankr. P. 9014(c) (rendering Bankruptcy Rule 7054 applicable to contested matters).

[6] *See In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009) (noting that the doctrine of the law of the case is intended to "maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit") (internal quotation and citation omitted).

[7] *Id.*

promptly sought reconsideration, so no party will have relied on the prior rulings. Moreover, because certain of the matters at issue were resolved without the benefit of briefing, and in view of the Court's paramount obligation to provide the parties with the opportunity to be heard and (above all) to get things right, the Court concludes that it is appropriate to consider the arguments being advanced by both parties on reconsideration.

## I.  Fees attributable to both counts should not be subject to the cap applicable to the 303(i) motion.

HCRE argues that the Court erred in dividing in half those fees that related to both the § 303(i) motion and the § 362(k) complaint. It contends there was an "indivisible nature" to the work related to the motion and complaint because all of the document discovery and depositions conducted were necessary to prosecute both claims. HCRE's argument is that the Court's decision to allocate half of those fees to the § 303(i) motion, where they were subject to the cap the Court imposed, has the effect of denying the debtor compensation for fees it would have incurred even if it had only sought recovery under § 362(k).

The Court is persuaded by the logic of that argument. The point of allocating some of the fees to "both" claims was that certain work would have been done had the debtor brought either of the claims without the other. As such, the Court agrees with the debtor that allocating half of those fees to the § 303(i) claim, where they are subject to a cap, operates to deny the debtor compensation for work that would have been done (and for which it would have been entitled to compensation) even had it not brought the claim under § 303(i). The Court will accordingly reverse the 50/50

division and allocate those fees, as the debtor suggests, to the claim under § 362(k), where they are not subject to a cap.

While defendants argue that this operates to permit a double recovery, that argument is incorrect.[8] Each hour of work performed is only being compensated once. The reallocation simply operates to ensure that, with respect to work that was in fact performed and related to the claim under § 362(k), the debtor not be denied compensation for that work because the debtor *also* asserted a claim under § 303(i).

On pages 6-8 of its brief, the debtor sets out a chart, which identifies 23 invoices that the Court allocated to "both" counts, which the debtor seeks to reallocate.[9] These invoices total $124,627.05 and, because the Court found that they relate to "both" counts, were allocated equally between the counts. So with these invoices *removed* from the Court's original allocation, the debtor would have been entitled (before application of the cap) to $109,793.85 on its claim under § 303(i)[10] and to $455,419.23 on its claim under § 362(k).[11]

The debtor's chart contends, without contradiction by the defendants, that $18,072.00 of the amount set forth in those invoices related only to the § 303(i) motion; the remaining $106,555.05 relates to either the § 362(k) complaint or both and is thus

---

[8] The defendants also argue that the § 303(i) motion and § 362(k) complaint relate to entirely different matters and the discovery expended on both was excessive and unnecessary. *See* D.I. 225 4-6. The Court disagrees. After reviewing the invoices, the Court concludes that the work and discovery was reasonable and relates to both counts.

[9] These invoices are set forth in a chart that is Exhibit A to this Memorandum Opinion.

[10] $172,107.37 - $62,313.52 (half of $124,627.05) = $109,793.85.

[11] $517,732.76 - $62,313.53 = $455,419.23.

recoverable under § 362(k). Adding these reallocated amounts to the amounts set forth in the prior paragraph (that had removed these invoices entirely), the debtor would be entitled to an award of and $127,865.85 on its claim under § 303(i) (before application of the cap)[12] and $561,974.28 on it claim under § 362(k).[13]

## II.    The Court will reallocate certain other fees.

The debtor's chart also identifies six other invoices, totaling $48,769.11, for which it simply takes issue with the Court's allocation.[14] The debtor contends that of this amount, all of which was allocated to the § 303(i) motion, $24,047.00 is properly allocable to the § 362(k) complaint or both. The defendants do not dispute the debtor's contention that these fees were misallocated. The Court will therefore revise the allocation of damages accordingly. After reallocating these amounts, the debtor is entitled to recover $103,818.85 on its claim under § 303(i) (before the application of the cap)[15] and $586,021.28 on its claim under § 362(k).[16]

## III.    The fee cap on the § 303(i) motion will remain in place.

The $75,000 cap the Court imposed on the recovery under § 303(i) was made up of two components – $50,000 for the reasonable cost of opposing the involuntary petition and $25,000 for filing a motion to recover fees under § 303(i). The debtor now argues that the second part of this cap, the $25,000 for the reasonable cost of filing a

---

[12] $109,793.85 + $18,072.00 = $127,865.85.

[13] $455,419.23 + $106,555.05 = $561,974.28.

[14] These invoices are set forth in a chart that is Exhibit B to this Memorandum Opinion.

[15] $127,865.85 - $24,047.00 = $103,818.85.

[16] $561,974.28 + $24,047.00 = $586,021.28.

motion under § 303(i), is improper.  The Court disagrees.  The original reasoning was that had the debtor's counsel successfully opposed the involuntary petition and obtained a prompt dismissal (which the debtor acknowledged would not have cost more than $50,000), then the fees associated with a routine § 303(i) motion would not have exceeded $25,000.

The debtor's argument is that that even in the hypothetical scenario in which it had successfully defended against the petition and obtained dismissal, the same discovery and preparation for trial would have been necessary.  In supporting this contention, HCRE points to the "exceedingly complicated investment structure related to the Petitioning Creditors' investment" that would have had to be explained – as well as the factual events leading up to the demise of HCRE and the involvement of Summit and the other Cornerstone entities.[17]

HCRE continues, arguing that the litigation over the § 303(i) motion was not routine, unlike the Court suggested, because of the contested nature of the involuntary petition.  The defendants fought the contention that the involuntary petition was filed in bad faith.  HCRE argues that it had to uncover the necessary evidence to support its § 303(i) motion, all of which was extremely expensive.[18]

In the Court's view, this argument fundamentally misses the point.  Under § 303(i)(1), a debtor may seek to recover fees and costs whenever a "court dismisses a

---

[17] D.I. 223 at 10.

[18] *Id.* at 11.

10

petition under this section other than on consent of all petitioners and the debtor."[19] In cases of a bad faith filing, § 303(i)(2) also authorizes the recovery of damages caused by the filing and punitive damages.  And a debtor that brings a motion to recover fees under § 303(i) is entitled not only to the fees it incurred in opposing the involuntary petition, but also to the fees it incurred in bringing the 303(i) motion.[20]

Having conceded at trial that it would not have cost more than $50,000 to oppose the involuntary filing had its general counsel paid appropriate attention to involuntary bankruptcy petition when it was served on him, the Court sees no basis to challenge that aspect of the cap.  In adding an additional $25,000 to that cap for the fees that would have been incurred in filing the 303(i) motion itself, the Court believes that it very conservatively estimated the cost associated with seeking recovery of those fees (which would have been the only recoverable damages, as by hypothesis, by successfully having the case dismissed without the entry of an order for relief, the debtor would not have sustained any other damages).  Under the statute, those fees could have been recovered under § 303(i)(1) without a showing of bad faith.  As such, the expensive litigation that in fact ensued over whether the defendants acted in bad faith, as part of the debtor's effort to satisfy § 303(i)(2), would

---

[19] 11 U.S.C. § 303(i)(1).

[20] *See In re Southern California Sunbelt Developers, Inc.*, 608 F.3d 456, 461 (9th Cir. 2010); *see also* 2 *Collier on Bankruptcy* ¶ 303.33 (16th ed. 2023) ("attorney's fees incurred in the pursuit of costs and damages under section 303(i)(2) are covered," although a court has "considerable discretion in determining fees").

have been unnecessary.[21]    The Court will accordingly deny the motion for reconsideration of this conclusion.

## IV.    The Court will grant the debtor's request for supplemental fees.

Finally, HCRE requests additional fees for the attorneys' fees and costs incurred in connection with the January 2023 trial, including preparation for that trial.  HCRE also makes a request for the fees and costs that it incurred in the post-trial motions up until present, claiming that all of these supplemental fees are reasonable under § 362(k).

The defendants argue that since HCRE did not request the additional attorneys' fees during the trial itself, it has waived the right to request these supplemental fees now.  That is incorrect.  Civil Rule 54(d) states that a claim for attorneys' fees should be "made by motion unless the substantive law requires those fees to be proved at trial as an element of damages."[22]  That motion must normally be filed within 14 days after the entry of judgment.[23]  Here, the Court has not even entered judgment.  The debtor has therefore certainly acted timely by seeking these fees via post-trial motion.

---

[21] Debtor's argument that it would have in any event sought to prove bad faith in order to recover punitive damages under § 303(i)(2) does not alter this calculus.  Had the debtor promptly opposed the petition and obtained its dismissal before the entry of an order for relief, the Court would have neither awarded punitive damages nor awarded fees and costs under § 303(i)(2) for the expenses incurred in pursuing them.

[22] Fed. R. Civ. P. 54(d)(2)(A).  The Federal Rules of Bankruptcy Procedure Rule 7054 incorporates the Federal Rule of Civil Procedure Rule 54.

[23] Fed. R. Civ. P. 54(d)(2)(B).

Moreover, Rule 54(d) vests the courts with discretion in awarding attorneys' fees. Courts are "free to pursue a case-by-case approach and to make their decisions on the basis of the circumstances and equities of each case."[24] Here, the debtor seeks a total of $78,616.06 in supplemental fees and has attached invoices documenting those fees to its papers.[25] Defendants do not challenge the invoices or take issue with the reasonableness of the amounts. The Court will accordingly add this amount to the fees to which the debtor is entitled on its claim under § 362(k). With this adjustment, the debtor is entitled to recover $75,000 on its claim under §303(i) (with the cap reducing the award of $103,818.85 to which it would otherwise be entitled), and $664,637.34 on its claim under § 362(k).[26]

## V.    Section 362(k) allows recovery of attorneys' fees as a subcategory of damages.

The defendants argue that HCRE is not entitled to any attorneys' fees under § 362(k) because the Court concluded that it did not suffer an injury, beyond having incurred attorneys' fees, as a result of the automatic stay violation.

That argument might well make sense with respect to other fee-shifting statutes, those that award fees to a party that prevails on the merits, and in a context in which proving damages is part of the plaintiff's burden to establish its claim. In

---

[24] Wright, Miller, & Cooper, 10 *Fed. Prac. & Proc. Civ. Juris.* § 2668 (4th ed. 2023).

[25] D.I. 223, Exs. 2 & 3.

[26] $585,922.51 + $78,616.06 = $664,538.57.

such a case, one can argue that a party that fails to prove that it suffered damages has not "prevailed" and therefore is not entitled to attorneys' fees.[27]

The difficulty with the defendants' argument as applied to this case is that this is not how § 362(k) is written. Rather, the statute provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees."[28] The use of the word "including" makes plain that in the context of a violation of the automatic stay, Congress viewed the costs and attorneys' fees associated with vindicating the protections of the automatic stay as part of the damages a debtor suffers when a creditor violates the stay. That is, because the statute makes clear that in the context of the automatic stay, attorneys' fees and costs are included among the debtor's "actual damages," a party that incurred such fees cannot be denied recovery for failing to have suffered actual damages.

The principal authority on which the defendants rely is *In re Rashid.*[29] But that case has nothing to do with this issue, since the debtor in that case proceeded *pro se* and the case did not even involve a request to recover attorneys' fees. There, the debtor was incarcerated for various types of fraud at the time of his bankruptcy petition. Before the bankruptcy, the United States obtained title to what had been the debtor's property through a forfeiture order, which related back to the time of the

---

[27] *Farrar v. Hobby,* 506 U.S. 103, 115 (1992).

[28] 11 U.S.C. § 362(k).

[29] *In re Rashid,* 210 F.3d 201 (3d Cir. 2000).

14

criminal activity.   Rashid appealed.   During the pendency of the appeal from the forfeiture order, and after Rashid had filed for bankruptcy, the United States recorded a lien on that property, which was a violation of the automatic stay.   The Third Circuit, however, found that Rashid suffered no injury as a result of the stay violation, since he was incarcerated at the time the lien was obtained, not living on the property, and was not intending the sell the property.   Not only did the United States not attempt to foreclose on the property, but ownership of the property would have in any event reverted back to the United States once the forfeiture order became final.[30]   The court accordingly held that the debtor was not entitled to damages for violation of the automatic stay.

The defendants contend that, like the debtor in *Rashid*, HCRE did not suffer an injury, precluding its recovery of attorneys' fees.   The difference, however, is that HCRE incurred attorneys' fees whereas Rashid did not.   And the plain text of the statute treats those attorneys' fees as "actual damages" that may be recovered when the automatic stay is violated.

Unlike *Rashid*, the other cases cited by the defendants do in fact support their argument.[31]   Those cases, however, are not binding precedent.   And for the reasons described below, this Court respectfully concludes that their reasoning is

---

[30] *Id.* at 209.

[31] *See In re Sturman*, 2011 WL 4472412 (S.D.N.Y. Sept. 27, 2011); *In re Saratoga Springs Plastic Surgery, PC,* 2005 WL 357207 (Bankr. N.D.N.Y. Feb. 11, 2005); *In re Hutchings,* 348 B.R. 847 (Bankr. N.D. Ala. 2006); *In re Ayscue,* 1995 WL 908383 (E.D. Va. May 4, 1995); *In re Bain,* 64 B.R. 581 (W.D. Va. 1986); *In re Brock Utilities & Grading, Inc.,* 185 B.R. 719 (Bankr. E.D.N.C. 1995).

unpersuasive.  For example, in *In re Sturman*, the District Court for the Southern District of New York expressed "reluctance to award fees and costs in the absence of other actual damages for fear of encouraging an 'excessively litigious approach' to minor stay violations."[32]  On that basis, the court denied recovery of attorneys' fees where "there has been little serious showing of actual harm."[33]

While this Court is not unsympathetic with that policy view, on matters on which Congress has unambiguously spoken, this Court does not believe that it may displace Congress' policy judgment with its own.  Indeed, the Supreme Court has said as much, noting that bankruptcy courts may not "run[] directly counter to Congress's policy judgment" because "the equity chancellor never did, and does not now, exercise unrestricted power to contradict statutory … law when he feels a fairer result may be obtained by application of a different rule."[34]  The difficulty with *Sturman* and the other cases on which defendants rely that reach the same conclusion is that they fail to heed this admonition.  Whether those courts are right or wrong, as a matter of bankruptcy policy, about the wisdom of treating the debtor's attorneys' fees incurred in response to a willful violation of the automatic stay as "actual damages" that may

---

[32] *In re Sturman*, 2011 WL 4472412, at *3 (S.D.N.Y. Sept. 27, 2011) (citations omitted).  *See also In re Saratoga Springs Plastic Surgery, PC,* 2005 WL 357207 (Bankr. N.D.N.Y. Feb. 11, 2005).

[33] *Sturman*, 2011 WL 4472412, at *4.

[34] *United States v. Noland*, 517 U.S. 535 (1996) (citations, internal quotations, and brackets omitted).

be recovered, Congress made that decision and reflected it in the text of § 362(k) itself. That language controls. [35]

## VI.    The fees sought are not unreasonable.

Defendants next argue that even if attorneys' fees were permissibly awarded, the amount of the fees was unreasonable.  They state that the attorneys' fees are unreasonable given the "lack of injury and lack of value in the managerial rights of the Funds."[36]    In making this argument, the defendants do not challenge the applicable hourly rates or suggest that the tasks involved should have been completed more efficiently.  Instead, they argue only that it was unreasonable to run up such a large bill when the debtor failed to prove that it had suffered any other damages.

Defendants are not wrong in arguing that the fees recovered ought to have some rational relationship to the harm the debtor seeks to redress.  Section 362(k) does not state expressly that the fees recovered must be "reasonable."  And although other provisions of the Bankruptcy Code, such as, for example, § 303(i), do include an express "reasonableness" requirement, courts have nevertheless found such a requirement to be implicit in § 362(k).[37]

---

[35] *See also In re Manley Toys Limited,* 2018 WL 1033426 (Bankr. D. N.J. Feb. 14, 2018), *citing In re Rodriguez,* 2012 WL 589553, at *4 (Bankr. D. N.J. Feb. 22, 2012).  *See also Marzullo v. Rubin,* 2014 WL 3844676, at *2 (Bankr. D. N.J. Aug. 5, 2014) (ruling that the plaintiff is entitled to actual damages in the form of reasonable attorneys' fees, despite being awarded only nominal damages); *In re Klein,* 226 B.R. 542, 544 (finding that legal services constitute the actual damages the debtor suffered); Charles J. Tabb, *Law of Bankruptcy* 244, (5th ed. 2020) ("the most common form of damages awarded [under § 362(k)] are costs and attorneys' fees incurred by the injured party in seeking to remedy the stay violation.  These damages should be recoverable even if no other damages are proven").

[36] D.I. 224 at 13.

[37] *See, e.g., In re Miller*, 447 B.R. 425, 435 (Bankr. E.D. P.A. 2011).

The problem with the defendant's challenge to the reasonableness of the fees that the debtor incurred, however, is that the argument proceeds with the benefit of hindsight. The debtor's position was that the termination of its management rights, which violated the automatic stay, caused it to lose millions of dollars in management fees to which it was otherwise entitled under the parties' contracts. In the end, this Court rejected that argument, finding that this claim for damages was unduly speculative in light of the fact that the debtor's business was essentially defunct and that the debtor lacked the capacity to perform its obligations under the contract.

While those are the facts as this Court found them after hearing the evidence adduced at trial, that was not the debtor's position. The debtor's view was that serving as manager of the investment funds was rather a simple matter and that the debtor could have, but for the termination of its management rights, found a way to perform the few duties necessary to earn those management fees. The fact that the Court rejected the debtor's argument in this regard, in light of the evidence presented at trial, does not mean that the debtor acted unreasonably in proceeding as it did. Life is lived forwards not backwards. And the reasonableness of one's conduct must be assessed at the time of the conduct and based on the information that was known or knowable at the time.[38]

---

[38] *See, e.g., Charter Township of Clinton Police & Fire Ret. Sys. V. KKR Fin. Holdings LLC*, 2010 WL 4642554, at *18 (S.D.N.Y. Nov. 17, 2010) (dismissing complaint for violation of the securities laws because the "Amended Complaint fails to allege sufficient facts linking the write-off of August, 2007 to 'known' or 'knowable' facts in existence when the Registration Statement was filed in April, 2007; in other words, this is pleading with 20/20 hindsight").

Defendant is therefore incorrect to argue that the fact that the debtor failed to prove other damages means that it acted unreasonably in incurring fees in trying. In light of the substantial amount that was at issue, the Court does not believe that the fees incurred were disproportionate to the stakes. While defendants are right that it would be unreasonable to spend $650,000 in attorneys' fees when it was as clear as day that the defendant had not suffered any injury, that is not what happened here. The Court accordingly will not deny or reduce the award under § 362(k) on the ground that it is unreasonable.

Relatedly, the defendants also argue that to the extent they violated the automatic stay, their violation was merely a "technical" one and should not provide the basis for an award of attorneys' fees. Defendants are correct that where a violation of the automatic stay essentially amounts to a foot fault, courts will take account of the "technical" nature of the stay violation in deciding what fees are reasonable.[39] But this is just a variant on the point addressed above. It is true that the Court ultimately made a factual determination that the debtor's business was essentially unsalvageable by the time the involuntary petition was filed, such that the stay violation can be viewed as a "technical" one. But the debtor sought to present a different story – one in which the termination of the debtor's right to manage the funds cost the bankruptcy estate millions of dollars in potential fees. Again, the fact

---

[39] *See In re Silk,* 549 B.R. 297 (Bankr. D. Mass. 2016); *In re Campbell,* 649 B.R. 831 (Bankr. S.D. Miss. 2023); *In re Valentine,* 648 B.R. 324 (Bankr. E.D. Cal. 2022); *In re Dean,* 490 B.R. 662 (Bankr. M.D. Pa. 2013) (finding an intentional violation of the automatic stay was more than a technical violation).

that the Court ultimately found that the evidence failed to support this version of events does not mean that the debtor acted unreasonably in advancing that argument.

## VII.   The reasons for capping the claim under § 303(i) do not apply to the claim under § 362(k).

The defendants also argue that this Court should cap the award under § 362(k) for the same reason it capped the award under § 303(i).[40]  Defendants contend that had the debtor acted reasonably in timely responding to the involuntary petition, then it would not have incurred $650,000 in attorneys' fees that it did litigating the automatic stay issue.  Accordingly, the defendants request that debtor's attorneys' fees be capped at the amount of work that would have been necessary to have either responded to the involuntary petition or brought a motion to reinstate HCRE as manager of the funds.

The Court disagrees.  The reason for the imposition of the cap under § 303(i) was that had the debtor conducted itself reasonably, it would have responded to the involuntary petition (rather than allow it to sit in a stack on the general counsel's desk for weeks), in which case it would have succeeded at having the bankruptcy case dismissed.  And because § 303(i) expressly limits a debtor to recovering a reasonable attorneys' fee, the Court concluded that the debtor may not recover fees greater than it otherwise would have incurred had it conducted itself reasonably.

---

[40] D.I. 224 at 13-14.

The claim for violation of the automatic stay is different.  That claim arises out of the defendants' conduct, *after* the order for relief was entered, to replace the debtor as the funds' manager.  In the end, the analysis boils down to one of causation.  To the extent that the debtor incurred more than $50,000 of fees in responding to the involuntary petition, the debtor bears the responsibility for those fees, since they can be said to have been *caused* by the debtor's own failure to respond timely to the involuntary petition.

With respect to the violation of the automatic stay, however, while it may be true that none of this would have happened "but for" the debtor's failure to respond to the petition, the subsequent knowing and intentional actions of the defendants can be said to be an "intervening cause" of the violation of the automatic stay.[41] Accordingly, the rationale for imposing the cap on the claim under § 303(i) does not apply to the claim under § 362(k).

## Conclusion

For the foregoing reasons, the debtor's motion will be granted in part and denied in part.  The defendants' motion will be denied.  The parties are directed to settle an order awarding the debtor $75,000 on its § 303(i) motion in the main

---

[41] *See generally* <u>Restatement (Second) of Torts § 440</u> comment b (1965) ("A superseding cause relieves the actor from liability, irrespective of whether his antecedent negligence was or was not a substantial factor in bringing about the harm. Therefore, if in looking back from the harm and tracing the sequence of events by which it was produced, it is found that a superseding cause has operated, there is no need of determining whether the actor's antecedent conduct was or was not a substantial factor in bringing about the harm.").

21

bankruptcy case, and a form of judgment in the adversary proceeding awarding the

debtor $664,637.34 on its claim for violation of the automatic stay.


Dated: November 14, 2023

_____
CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE